IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02383-PAB-KAS

JANE DOE,

    Plaintiff/Counter Defendant,

v.

FRANK DANIEL MALOIT,

    Defendant/Counter Claimant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Plaintiff's **Motion for Leave to Proceed Under Pseudonym** [#33] (the "Motion"), which she filed pursuant to the Chief District Judge's November 14, 2024 Order [#32]. Defendant filed a Response [#36] in partial opposition to the Motion [#33]. No reply briefs were filed and the time to do so has elapsed. The Motion [#33] was referred to the undersigned. *See Memorandum* [#44]. The Court has reviewed the briefing, the entire case file, and the applicable law. For the following reasons, the Motion [#33] is **DENIED WITHOUT PREJUDICE**.

**I. Background**

    Plaintiff and Defendant were married from 2006 to 2018. *See Compl.* [#1], ¶ 10. In April or May 2022, Plaintiff "began receiving phone calls and emails at her place of employment – a school – from strangers, who informed Plaintiff that there were compromising photographs of her online. *Id.*, ¶ 14. Some had been taken by Defendant, others by Plaintiff of herself, all while they had been married. *Id.*, ¶ 16. They were taken

for her and Defendant's private use, and she never consented to their broader disclosure. *Id.*, ¶ 18. At some point between May and August 2022, Defendant admitted that he had previously posted the photographs to a website called RedClouds, where users can share pornographic content. *Id.*, ¶ 19. The photographs then spread to other websites, some of which posted them alongside Plaintiff's name, employment information, and work contact information. *Id.*, ¶¶ 20, 22. Plaintiff had to bring the matter to her employer's attention and hired a lawyer to attempt to get the photographs removed from various websites, but only some of the websites have complied. *Id.*, ¶¶ 24-25, 27-30. Plaintiff alleges that Defendant disclosed her photographs online. *See, e.g.*, *id.*, ¶¶ 43, 55. She lodges three claims against Defendant: (1) disclosure of intimate images, in violation of 15 U.S.C. § 6851; (2) unauthorized disclosure of intimate images, in violation of Colo. Rev. Stat. § 13-21-1401 *et seq.*; and (3) a request for permanent injunctive relief against Defendant. *Id.*, ¶¶ 36-66.

Defendant denies wrongdoing, alleging that Plaintiff participated in and consented to the posting of the photographs online. *See Answer & Counterclaims* [#9] at 4-5, ¶ 15. He "assisted Plaintiff, with her knowledge, with trying to take some photographs down since 2022." *Id.* at 7, ¶ 23. He assisted her in hiring an attorney to attempt to remove photos that had spread beyond RedClouds, but not all websites complied. *Id.*, ¶ 25.

Defendant has also asserted counterclaims against Plaintiff. *Id.* at 19-34. He alleges that he and Plaintiff were consumers of RedClouds content from 2006 to 2009, and that in 2009 or 2010, they "began using RedClouds as both content consumers and content creators." *Id.* at 20-21, ¶¶ 10-18. Plaintiff allegedly "explicitly consented" to posting various photographs to RedClouds, initially with her face blacked out but eventually with her face visible. *Id.* at 21, ¶¶ 19-20, 27. Defendant alleges that the parties

2

continued to engage in erotic photography content creation until 2022, when they were no longer married. *Id.* at 23, ¶¶ 37, 44. Around that time, the parties began having disagreements over parenting and custody, disputes which continued through August 2024. *Id.* at 24-26, ¶¶ 69-72, 78, 91. Ultimately, Defendant decided to run for office, which he announced on August 29, 2024. *Id.* at 28, ¶¶ 109, 114. Given the timing of Plaintiff's Complaint [#1], which she filed on August 29, 2024, Defendant believes his children told her about his run for office and she "timed the filing of this action to coincide with [Defendant's] announcement" in a bid to harm his reputation. *Id.*, ¶¶ 117-22. Defendant lodges two counterclaims against Plaintiff: abuse of process and extreme and outrageous conduct. *Id.* at 30-33.

On September 25, 2024, Plaintiff filed a Motion for Alternative Dispute Resolution and to Seal Filings [#10] (the "ADR Motion"), in part moving to seal "the Complaint, Civil Cover Sheet, Summons . . . and any further filings during the ADR period (including Defendant's anticipated answer and counterclaims)" and "stipulat[ing to] allowing Defendant to proceed under the pseudonym 'John Doe' until the disposition of this litigation." *ADR Motion* [#10] at 2, ¶¶ 6, 7. On November 14, 2024, the Chief District Judge found that the parties had not sufficiently briefed the pseudonymity issue so it "den[ied] without prejudice the request for [Defendant] to proceed as 'John Doe.'" *Order* [#32] at 5. Additionally, the Court ordered Plaintiff "to show cause why she should be allowed to continue as 'Jane Doe.'" *Id.*

Plaintiff filed the subject Motion [#33] pursuant to the Order [#32], requesting to proceed in this matter pseudonymously and seeking an order "prohibiting Defendant from identifying Plaintiff in any document or pleading in this action; ordering Defendant not to

3

identify Plaintiff to any persons not directly involved in this action; and prohibiting Defendant from disclosing any information in any circumstances which would lead to Plaintiff being readily identified by anyone familiar with the intimate issues at the center of this action." *Motion* [#33] at 5. Defendant does not object to Plaintiff proceeding pseudonymously but argues that the additional relief sought would prevent him from effectively defending himself. *See Response* [#36] at 1.

## II. Legal Standard

"Lawsuits are public events." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). "Courts are public institutions which exist for the public to serve the public interest" and "secret court proceedings are anathema to a free society." *Id.* at 800. Therefore, "[o]rdinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).

Because of these principles, D.C.COLO.LCivR 7.2 requires that a party seeking to restrict public access make a five-part showing, namely: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and why that interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternatives to restricted access are unavailable; and (5) identify the level of restriction sought. D.C.COLO.LCivR 7.2(c).

The Federal Rules of Civil Procedure contemplate the naming of parties. Rule 10(a) requires that a complaint "name all the parties," and Rule 17(a) requires the prosecution of an action "in the name of the real party in interest." Fed. R. Civ. P. 10(a),

4

17(a); *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) (stating that "there is no explicit congressional grant of a right of a party to proceed anonymously"); *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982) ("There is no provision in the Federal Rules of Civil Procedure for suit against persons under fictitious names, and there are likewise no provisions for anonymous plaintiffs.").

Because the general rule is that lawsuits are public, "a plaintiff should be allowed to proceed anonymously 'only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger or physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Doe v. Regents of Univ. of Colo.*, 603 F. Supp. 3d 1014, 1018-19 (D. Colo. 2022) (quoting *Zavaras*, 239 F.3d at 803). Ultimately, the decision whether to allow a plaintiff to proceed pseudonymously is within the trial court's sound discretion. *Cf. Luo v. Wang*, 71 F.4th 1289, 1296 (10th Cir. 2023) (citing *Zavaras*, 139 F.3d at 803-04). The Court is not bound by the parties' stipulation or agreement to proceed anonymously. *See Order* [#32] at 4 ("Plaintiff cannot stipulate to another party's use of a pseudonym.").

### III. Analysis

**A.     Pseudonymity**

Plaintiff argues that this case involves two of the three "exceptional" considerations that justify anonymity: it pertains to matters of a highly sensitive and personal nature, and the injury litigated against would be incurred as a result of disclosure. *See Motion* [#33] at 3, ¶ 7. She claims that this matter "revolves around allegations concerning [her] purported sexual habits," as well as "[her] sexual history with Defendant, as well as her

5

engagement in erotic photography therewith." *Id.*, ¶ 9. She admits that her identity "can potentially be gleaned from the allegations made in the pleadings thus far, and information regarding this lawsuit has already been made available to the public at large" but argues that denying her leave to proceed under a pseudonym "will only compound the invasion of privacy to which she has already been subjected and exacerbate the resulting injury." *Id.* at 4, ¶ 12. The Court acknowledges Plaintiff's privacy concerns but is not persuaded that she has met the high bar necessary to proceed pseudonymously.

### 1.     Matters of a Highly Sensitive and Personal Nature

Courts in this Circuit have permitted pseudonymous litigation under situations involving, for example, "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families[.]" *Does 1 through 11 v. Bd. of Regents of Univ. of Colo.*, No. 21-cv-02637-RM-KMT, 2022 WL 43897, at *3 (D. Colo. Jan. 5, 2022). Similarly, plaintiffs alleging that they were sexually abused *as minors* often may proceed pseudonymously. *See, e.g.*, *Does 1-51 v. U.S. Olympic Comm.*, No. 19-cv-00737-PAB-KMT, 2019 WL 2992031, at *1 (D. Colo. July 9, 2019) (collecting cases). However, courts "have generally required adult plaintiffs to proceed in their own name" even when their allegations relate to sexual assault or sexual harassment. *See, e.g.*, *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017) (collecting cases involving allegations of sexual assault or harassment by employers or at university); *see also Doe v. Bd. of Regents of Univ. of N.M.*, No. 20-1207 JB/JHR, 2021 WL 4034136, at *1 (D.N.M. Sept. 4, 2021) ("Doe is not a minor—a status which confers heightened anonymity protections—and the only cases Doe cites from the Tenth Circuit dealing with 'allegations of a sexual nature' involve minors."). Thus, while the Court recognizes

6

Plaintiff's asserted privacy interests, the Court is not persuaded that the subject matter of this lawsuit necessarily justifies Plaintiff proceeding pseudonymously. *Cf., e.g.*, Minute Order [#82] at 4, *Levy v. Shuster*, No. 23-cv-01149-NYW-KAS (D. Colo. Nov. 28, 2023) (stating that the court "remain[ed] unconvinced that the subject matter of this case [i.e., cases involving "differing understandings of sexual encounters over a year-long relationship"] inherently compels pseudonymity").

This is especially true given Plaintiff's decision to identify Defendant by name in her publicly filed Complaint [#1], which also identified him as her ex-husband of more than 11 years. *See Compl.* [#1], ¶ 10. This case proceeded for nearly a month before Plaintiff took any effort to shield Defendant's identity, even while he was running for public office. *See generally ADR Motion* [#10]; *Answer & Counterclaims* [#9] at 28, ¶¶ 114, 117-118. For his part, Defendant alleges that Plaintiff's filing of this suit was intended to harm his reputation, and he argues that she successfully caused a public frenzy. *Answer & Counterclaims* [#9] at 28, ¶ 122; *Response* [#36] at 2 ("Plaintiff's multiple public filings . . . directly led to members of the public finding and posting Plaintiff's action on the City of Erie Facebook page, leading to a Boulder Weekly Article."). Even in this Motion [#33], Plaintiff asks the Court to broadly enjoin Defendant's ability to discuss her or this lawsuit, without any corresponding limitations on her own speech or conduct. *See Motion* [#33] at 5.

To the extent that Plaintiff's and Defendant's sexual history and engagement with erotic photography are highly sensitive and personal topics, they are sensitive and personal *to both parties involved*. However, Plaintiff has not conducted this litigation as though it involves matters of a highly sensitive and personal nature—instead, she would

7

cloak herself in pseudonymity, and the protections it affords, while publicly lobbing allegations at Defendant by name.[1] The Court does not find that the sensitive or personal nature of the allegations warrants pseudonymity.

### 2. Incurring the Injury Litigated Against

Turning to Plaintiff's second argument, the Court does not find that "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Zavaras*, 139 F.3d at 803. Taking her allegations as true, the injury of which Plaintiff complains has already occurred, as far as Defendant is concerned: the photographs were allegedly taken between 2006 and 2012 and posted "as far back as 2016" before spreading to various websites along with Plaintiff's personally identifying information. *See Compl.* [#1], ¶¶ 17, 20-22. Plaintiff has already brought the matter to her employer's attention and taken various remedial steps—including having her employer remove her work photograph from its website and change her work email address, hiring an attorney to attempt to remove the photographs from various websites, paying for a subscription to PimEyes, and making requests to Google to remove various URLs from its search results. *Id.*, ¶¶ 24-29. Although these efforts were not completely successful, Plaintiff does not allege that Defendant is continuing to upload or disseminate these photographs.

Plaintiff admits that her identity "can potentially be gleaned from the allegations made in the pleadings thus far" and that "information regarding this lawsuit has already

---

[1] For example, on October 29, 2024, Plaintiff publicly filed her Response to Defendant's Motion for Sanctions [#19], which reasserted her theory of the case and (ironically) lambasted Defendant for "elect[ing] to draw further attention to this matter by filing a ridiculous Answer with Counterclaims, the latter in excess of 162 paragraphs, which – much like this instant Motion – may very well be aimed at generating attention for yet another political campaign by Defendant." *See Response to Motion for Sanctions* [#19] at 4. Of course, Defendant was required to file an Answer along with any compulsory counterclaims he had at that time. *See* Fed. R. Civ. P. 13(a)(1).

been made available to the public at large." *Motion* [#33] at 4, ¶ 12. More than that, Plaintiff publicly named Defendant in her Complaint [#1] and identified him as her ex-husband of more than 11 years. As a result, nearly anyone who personally knows Plaintiff or Defendant can easily identify her simply by reading her Complaint. Moreover, Plaintiff has not disputed Defendant's assertion that her allegations have already gone public on Facebook and through the Boulder Weekly article. *Cf. Response* [#36] at 2-3; *see also A.M. ex rel. D.M. v. Poudre Sch. Dist.*, No. 24-cv-02723-KAS, 2024 WL 4879005, at *2-3 (D. Colo. Oct. 4, 2024) (denying parents' and a minor plaintiff's request to proceed pseudonymously where their parents had "separately publicized their abuse allegations and this lawsuit to the press").

Any damage from this case's publicization has already been incurred; therefore, the "need for the cloak of anonymity" is not apparent. *See, e.g.*, *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) (affirming denial of leave to proceed pseudonymously where the plaintiff "had already suffered the worst of the publicity and embarrassment"); *Luo*, 71 F.4th at 1294 (concluding that "the injury [the plaintiff] litigated against[,] . . . [the defendant's previous] alleged defamation and disclosure of her private information—would not be incurred as a result of the disclosure of her identity in this case") (internal quotation marks and modification omitted); *Raiser*, 182 F. App'x at 811-12 ("In cases where the sensitive information has already been disclosed . . . the social interest in allowing a party to proceed anonymously is limited.") (citing *Zavaras*, 139 F.3d at 802).

Importantly, in finding that the injury Plaintiff complains of has already occurred, the Court does not minimize the risk that these photographs will spread further now that

9

they are on the internet or the harm that could cause to Plaintiff—but that is neither the injury nor the parties against whom Plaintiff is currently litigating. Plaintiff has not named any websites, domain name owners, or internet users as defendants in this matter and she does not seek to enjoin the further dissemination of her photographs; rather, she is suing her ex-husband for his alleged prior act of posting her photographs online and the damage that act caused. *See, e.g.*, Compl. [#1], ¶ 34 ("As a result of Defendant's actions, Plaintiff has incurred expenses for, among other things, hiring an attorney in an attempt to get the [p]hotographs taken off the Internet, subscribing to PimEyes, in addition to suffering mental distress, anxiety, reputational damage, humiliation, fear, and uncertainty."). While she asks the Court for injunctive relief, *see Compl.* [#1], ¶¶ 60-65, she does not allege that Defendant has continued to disseminate photographs of her or that he is likely to do so now that he has been summoned into federal court. Thus, even though Plaintiff seeks prospective relief, her damages are predominantly retrospective in nature, and the injury she is litigating against is not likely to be incurred because of the disclosure of her identity in this case. *Cf. Luo*, 71 F.4th at 1300. In summary, because Plaintiff has not shown that exceptional circumstances exist warranting pseudonymity, the Court will not allow her to proceed pseudonymously. The Motion [#33] is **denied without prejudice**.

B.     **Further Requests for Relief**

Plaintiff also asks the Court to enter an order preventing Defendant from "identifying Plaintiff in any document or pleading filed in this action; ordering Defendant not to identify Plaintiff to any persons not directly involved in this action; and prohibiting Defendant from disclosing any information in any circumstances which would lead to

Plaintiff being readily identified by anyone familiar with the intimate issues at the center of this action." *Motion* [#33] at 5. Because the Court denies Plaintiff's request to proceed pseudonymously, her request for further relief is similarly **denied without prejudice**. The Court notes that the parties have agreed to, and the Court has entered, a Joint Protective Order [#31] that should address Plaintiff's concerns about Defendant's conduct during litigation.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#33] is **DENIED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** that all future filings shall identify Plaintiff by her real name.

IT IS FURTHER **ORDERED** that this Order is **STAYED** to and including **February 18, 2025, or further order of the Court**.

Dated: January 31, 2025                          BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge