IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02383-PAB-KAS

DANIELLE MALOIT,

     Plaintiff/Counter Defendant,

v.

FRANK DANIEL MALOIT,

     Defendant/Counter Claimant.

_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Sanctions** [#87][1] and

**Motion for Summary Judgment** [#91]. Defendant proceeds with the assistance of

limited scope counsel. *Courtroom Minutes* [#109]. Plaintiff, who proceeds as a pro se

litigant,[2] filed Responses in opposition to the Motion for Sanctions and the Motion for

Summary Judgment. *See* [#117, #112]. Defendant filed Replies [#118, #113] in support of

the same. The Motions [#87, #91] have been referred[3] to the undersigned. *See Order*

*Referring Case* [#95]; *see also Memoranda* [#90, #96]. The Court has reviewed the briefs,

---

[1] "[#87]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] All parties do not consent to magistrate judge jurisdiction. *See Signed Consent/Non-Consent Form* [#17]; *Order Referring Case* [#95].

the case file, and the applicable law. For the reasons stated below, the Court

**RECOMMENDS** that the Motion for Summary Judgment [#91] be **GRANTED**. The Court

further **ORDERS** that the Motion for Sanctions [#87] be **GRANTED in part** and

**RECOMMENDS** that the Motion [#87] be **DENIED in part**.[4] Finally, as explained further

below, the Court **ORDERS** Plaintiff to **SHOW CAUSE** why she should not be subject to

additional sanctions.

## I.   Background

Plaintiff Danielle Maloit initiated this action against Defendant Frank Maloit, her ex-

husband, on August 29, 2024. Plaintiff alleges that Defendant posted nude photos of her

to a website called RedClouds, where users "can share amateur explicit and pornographic

content." *Compl.* [#1] ¶ 19. Although Plaintiff consented to the photographs being taken,

she alleges that they were taken when Plaintiff and Defendant were still married and "with

[the] understanding that they were intended for her and Defendant's private use." *Id.* ¶¶

16, 18. Plaintiff alleges that the photographs spread to scores of other websites, causing

her financial, reputational, emotional, and professional harm. *Id.* ¶¶ 20, 24-27, 33-34.

Specifically, she alleges that some websites containing these photographs also reveal

her name, employment information, and professional email address, where she has been

---

[4] Defendant's request for fees from Plaintiff is a nondispositive sanction, which falls under a magistrate judge's authority under Fed. R. Civ. P. 72(a) and on which the Court issues an order, and his request for dismissal of Plaintiff's claims is dispositive, on which the Court issues a recommendation. *See Merrill v. Contract Freighters, Inc.*, No. 19-cv-02309-CMA-SKC, 2021 WL 3742242, at *1 n.3 (D. Colo. Aug. 24, 2021) (determining by order the amount of fees to be awarded in connection with a motion for sanctions and noting that the district judge had already resolved the dispositive issue regarding dismissal).

contacted concerning the photographs.[5] *Id.* ¶¶ 22, 24. Plaintiff states that "[i]t is not entirely clear when Defendant first shared the Photographs online, but Plaintiff was able to trace them as far back as 2016." *Id.* ¶ 21. She also alleges that "it is not clear whether the Photographs remain in his possession in physical or electronic form." *Id.* ¶ 32.

Plaintiff sues Defendant for unauthorized disclosure of intimate images pursuant to 15 U.S.C. § 6851 and Colo. Rev. Stat. § 13-21-1401 et seq. *Id.* at 6-9. She also asks the Court to permanently enjoin Defendant from disclosing the images in question and to order him to "delete or destroy any remaining physical or electronic version of any and all photographs, videos, or other intimate visual depictions of Plaintiff still remaining in [his] possession, custody, or control." *Id.* ¶ 64.

Defendant denies that he uploaded any nude photographs of Plaintiff to the internet without her consent, instead asserting that she "participated in and consented to the posting of her pictures online." *Answer & Countercls.* [#9] ¶ 15. Defendant elaborates that he and Plaintiff were users and content producers on RedClouds throughout their marriage and after their divorce, and that Plaintiff, at times, monetized her erotic content creation. *Id.* ¶¶ 32, 44, 52-58. Defendant alleges that he has "assisted Plaintiff, with her knowledge, with trying to take some photographs down since 2022." *Id.* ¶ 23. Theorizing that Plaintiff filed the instant lawsuit in retaliation for an unrelated parenting dispute and to undermine his efforts to run for a public office, Defendant asserts counterclaims for abuse of process and extreme and outrageous conduct resulting in emotional distress. *Id.* ¶¶ 78-84, 109-20, 138-54, 155-60.

---

[5] Plaintiff does not allege precisely how this occurred but speculates that "someone had used the PimEyes facial online recognition software on the Photographs to determine Plaintiff's identity and place of employment." *Compl.* [#1] ¶¶ 23, 26.

## II.    Motion for Summary Judgment [#91]

**A.    Legal Standard**

The purpose of a motion for summary judgment is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court resolves factual disputes and draws reasonable inferences in favor of the nonmovant. *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1168 (10th Cir. 2023). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted). A factual dispute is genuine if the evidence could enable a reasonable jury to find for the nonmoving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *Anderson*, 477 U.S. at 248, 256. When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material

fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671.

## B.    Analysis

Defendant asserts that summary judgment in his favor is warranted on Plaintiff's claims because "there is no evidence that [Defendant] posted any intimate pictures o[f] [Plaintiff]—with or without her consent—to any website during the effective periods of the statutes underlying [Plaintiff's] claims." *Motion* [#91] at 2.

### 1.    Federal Claim (Claim 1)

Plaintiff asserts her first claim pursuant to 15 U.S.C. § 6851. "As part of the Violence Against Women Act Reauthorization of 2022, which took effect on October 1, 2022, Congress provided a civil action for the disclosure of a person's 'intimate visual depictions' without their consent." *Luchte v. Coyle*, No. 2:24-cv-00597-BLW-DKG, 2025 WL 2109640, at *3 (D. Idaho May 29, 2025), *report and recommendation adopted*, 2025 WL 2108789 (D. Idaho July 25, 2025). The cause of action provides:

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief[.]

15 U.S.C. § 6851(b)(1)(A). The statute provides for actual damages or liquidated damages in the amount of $150,000, and costs, fees, and other equitable relief. § 6851(b)(3)(A).

Although the weight of the authority reveals that § 6851 does not apply retroactively to disclosures predating October 1, 2022—*see, e.g., Doe v. Nichols*, No. 2:25-cv-01706-SVW-AS, 2025 WL 4058290, at *2 (C.D. Cal. Nov. 21, 2025); *Parkes v.*

*Walker*, No. 25-CV-3783 (KMW), 2025 WL 2371301, at \*4 (S.D.N.Y. Aug. 14, 2025); *Ballou v. Wells*, 24-CV-23-GKF-CDL, 2024 WL 2328216, at \*1 (N.D. Okla. May 22, 2024)—retroactivity does not appear to be the crux of Plaintiff's argument. Instead, she asserts that she has "received annual, targeted harassment via her workplace through March 5, 2026," which are "active disclosures occurring after the October 2022 federal effective date." *Response* [#112] at 2.

For support, she cites an email[6] that she apparently received at work on March 5, 2026. *See Plf.'s Ex. 1, March 5 Email* [#112-1].[7] The email came from arkan.farid@gmx.at, and in the message, the sender solicited additional nude photographs and information about Plaintiff's personal life. The sender attached a jpeg to the email containing a collage of nude images of Plaintiff accompanied by what appears to be her professional bio and contact information. *Id.* In essence, Plaintiff argues that the March 5 email from arkan.farid@gmx.at constitutes a "disclosure" that is actionable against Defendant.

A plain reading of the statute undermines her theory. Under the statute, to "disclose" means to "transfer, publish, distribute, or make accessible." § 6851(4). The associated cause of action provides that "an individual whose intimate visual depiction is disclosed . . . where such disclosure was *made by a person* who knows that, or recklessly disregards whether, the individual has not consented . . . may bring a civil action *against*

---

[6] Defendant asserts that Plaintiff did not properly disclose a copy of this email to him before attaching it to her Response [#112]. *See Reply* [#113] at 9. The Court briefly addresses the email for the sake of reaching the merits of Plaintiff's argument. However, the Court does not condone Plaintiff's failure to produce such evidence and will discuss her discovery conduct in more detail below.

[7] This document was filed under Level 1 restriction, which limits access to the Court and to the parties. *See* D.C.COLO.LCivR 7.2(b).

*that person*[.]" § 685(4) (emphasis added). Plaintiff does not argue or present any evidence showing that the email address belongs to Defendant. Therefore, the email shows that the unidentified third party disclosed an intimate visual depiction of Plaintiff without her consent after the statute's effective date. It is insufficient to establish a genuine dispute of material fact as to whether *Defendant* disclosed an intimate visual depiction of Plaintiff without her consent after the statute's effective date.

Plaintiff's deposition further underscores the absence of a genuine dispute of material fact as to whether Defendant disclosed an intimate visual depiction of her after October 1, 2022. During her deposition, defense counsel asked Plaintiff, "As you sit here today, is it fair to say that you have no evidence suggesting that [Defendant] posted pictures on sites other than RedClouds?" *Def.'s Ex. A, Plf.'s Depo.* [#93-1] at 127:1-3. Plaintiff responded, "I have no evidence, no." *Id.* at 127:4. Plaintiff further testified that she had no evidence showing Defendant posted any intimate visual depiction of her to any of the websites where such images were ultimately found. *Id.* at 219:20-230:14. In the absence of any evidence that Defendant disclosed intimate visual depictions of Plaintiff after October 1, 2022, the mere possibility that he *could* have is insufficient to withstand a motion for summary judgment.

For these reasons, the Court **recommends** that the Motion [#91] be **granted** with respect to Plaintiff's first cause of action under 15 U.S.C. § 6851.

### 2.    State Claim (Claim 2)

Plaintiff asserts her second claim pursuant to Colorado's Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, Colo. Rev. Stat. § 13-21-1401 *et seq.*, which took effect on April 8, 2019. The law provides that

a depicted individual who is identifiable and who has suffered harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person if the person knew or acted with reckless disregard for whether:

(a) The depicted individual did not consent to the disclosure;

(b) The intimate image was private; and

(c) The depicted individual was identifiable.

COLO. REV. STAT. § 13-21-1403(2). "Disclosure" means "transfer, publication, or distribution to another person." COLO. REV. STAT. § 13-21-1402(3). The General Assembly stated that "[t]his act applies to acts committed on or after the effective date of this act." Ch. 88, sec. 4, 2019 Colo. Sess. Laws 6.

Plaintiff's state law claim fails for the same reason that her federal claim fails: she cannot establish a genuine dispute of material fact concerning whether Defendant disclosed any intimate image of her after the statute's effective date. Again, disclosures by unidentified *third parties* on the internet are insufficient to support a cause of action pursuant to § 13-21-1403(2) against *Defendant*. Therefore, the Court **recommends** that the Motion [#91] be **granted** with respect to Plaintiff's second cause of action under Colo. Rev. Stat. § 13-21-1403.

Because the Court **recommends** that summary judgment be entered in Defendant's favor on Claims 1 and 2, the Court further **recommends** that summary judgment be entered in Defendant's favor on Claim 3 for injunctive relief.

### 3.     Request for Attorney Fees and Costs

Finally, Defendant requests an award of his attorney fees on the theory that he may, as a prevailing defendant, recover such fees under the federal Violence Against Women Reauthorization Act of 2022. *See Motion* [#91] at 8-9. In support, Defendant

8

argues, "[u]nlike Colorado's statute, which limits a recovery of attorney fees and costs to 'a prevailing plaintiff[,]' C.R.S. § 13-21-1406, the federal statute provides that 'an individual' may recover their attorney fees and costs, 15 U.S.C. § 6851(b)(3)(A)(i). *Id*. at 8; *Reply* [#113] at 10. Put differently, Defendant argues that he is entitled to fees and costs because the federal statute is silent on the issue. This is not what Congress intended.

Little case law interpreting and applying the federal statute exists because the statute is still relatively new. "When interpreting a statute, [a court's] primary task is to determine congressional intent, using traditional tools of statutory interpretation." *Potts v. Ctr. for Excellence in Higher Ed.*, 908 F.3d 610, 613 (10th Cir. 2018) (internal quotation marks omitted). A court must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id*. (quotation marks omitted). To make that determination, a court must "examin[e] the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. (internal quotation marks omitted).

If the statutory language is ambiguous, a court "'look[s] to the legislative history and the underlying public policy of the statute' to guide [its] interpretation." *Dekovic v. Rubio*, 169 F.4th 1002, 1014 (10th Cir. 2026) (quoting *Seale v. Peacock*, 32 F.4th 1011, 1024 (10th Cir. 2022)). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation . . . or capable of being understood by reasonably well-informed persons in two or more different senses[.]" *Id*. (internal quotation marks and citations omitted).

9

Here, the federal statute's plain language renders clear Congress's intent to create remedies for individuals harmed by unauthorized disclosure of their intimate images. The statute plainly articulates the right of action available to the "individual whose intimate visual depiction is disclosed" without consent. 15 U.S.C. § 6851(b)(1)(A). And the statute plainly articulates the relief available to that individual for "actual damages sustained by the individual or liquidated damages in the amount of $150,000" and the reasonable costs and attorney fees incurred by that individual in bringing the action. 15 U.S.C. § 6851(3)(A)(i). *See, e.g., S.S. v. Collins*, No. 23-0892 (KMW-AMD), 2025 WL 3187483, at *6 (D.N.J. Nov. 14, 2025) (describing the relief "available to the depicted individual suing under the [federal] statute"); *K.I. v. Tyagi*, No. 23-2383-JRR, 2024 WL 4732703, at *6 (D. Md. Nov. 8, 2024) (noting liquidated damages' availability under the federal statute "[w]here a plaintiff establishes a § 6851 violation"). Nowhere does the statute articulate or contemplate fees and costs for a prevailing defendant. The Court will not read such a provision into the statute or otherwise legislate. *See In re San Luis & Rio Grande R.R., Inc.*, 634 B.R. 599, 627 (Bankr. D. Colo. 2021) (discussing and applying the "omitted-case canon" of interpretation, which means, "[a]n absent provision cannot be supplied by the courts.") (internal quotation marks and citation omitted). If Congress intended to allow a prevailing defendant to recoup its fees, it knows how to do that. *See, e.g.,* 42 U.S.C. § 1988(b) (allowing a court, in its discretion, to award "a reasonable attorney's fee as part of the costs" to "the prevailing party" in civil rights cases).

Accordingly, the Court **recommends** that Defendant's request for an award of fees and costs under 15 U.S.C. § 6851(b)(3)(A)(i) be **denied**. However, the Court also **recommends** that Defendant be awarded his allowable costs under 28 U.S.C. § 1920

and Federal Rule of Civil Procedure 54(d)(1), which permits an award of "costs—other than attorney's fees . . . to the prevailing party."

### III.   Motion for Sanctions [#87]

The Court next turns to Defendant's Motion for Sanctions [#87], in which Defendant seeks sanctions pursuant to Fed. R. Civ. P. 37 based on Plaintiff's "failure to provide proper discovery responses and overall failure to abide by her discovery duties." *Motion* [#87] at 1. Specifically, he requests attorney fees and costs associated with (1) continued conferrals concerning discovery deficiencies, and (2) preparing for and attending a September 29, 2025 Discovery Hearing. *Id.* Additionally, to discourage future discovery misconduct, Defendant also seeks one or more of the following sanctions:

1. striking Plaintiff's claims;

2. dismissing Plaintiff's claims in whole;

3. striking Plaintiff's allegations that Defendant posted any pictures online without her consent from the spring of 2018 to the present;

4. precluding Plaintiff from testifying or presenting evidence that Defendant posted any pictures to any website after the spring of 2018;

5. prohibiting Plaintiff from opposing Defendant's counterclaim allegations that she lacked evidence to support her claims;

6. ordering that Plaintiff is deemed to have admitted allegations in Defendant's counterclaims concerning her lack of evidence or good faith;

7. striking Plaintiff's affirmative defenses 1 through 6;

8. granting default judgment in favor of Defendant on all claims and against Plaintiff on all claims.

*Id.* at 14-15.

## A.    Additional Background

Although Plaintiff proceeds pro se as of the filing of this Recommendation, she was, at all times relevant to the events giving rise to the instant Motion [#87], represented by Attorney Randee Stapp.[8] On December 19, 2024, the undersigned held a Scheduling Conference and issued the operative Scheduling Order [#41] in this matter. Six months later, the parties emailed chambers concerning a discovery dispute, and the Court set the matter for a Discovery Hearing in July 2025. *Minute Order* [#60].

At the hearing, the Court ordered Plaintiff to supplement deficient initial disclosures to include the subject matter of discoverable information that identified individuals may possess pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i). *Hearing Tr.* [#76] at 62:1-15. The Court also ordered Plaintiff to amend a response to a request for admission. Specifically, Plaintiff attempted to respond to a request for admission[9] by making an admission "in part," but the Court noted that, as worded, if Plaintiff admitted any portion of the request, then the answer is "admit." *Id.* at 68:14-69:8. The Court also ordered Plaintiff's counsel to confer meaningfully with opposing counsel concerning the scope of documents falling within the protective order, ordered counsel to refrain from making generic and unsupported general objections to each request, and warned Plaintiff that she had a continuing obligation to produce any evidence to the defense that affirmatively links Defendant to the online postings. *Id.* at 66:14-25, 73:5-74:21, 48:1-10. At the end of the hearing, defense counsel

---

[8] Ms. Stapp moved to withdraw from the representation in December 2025, and the Court granted the motion. *See Motion to Withdraw as Attorney* [#83]; *Order* [#85].

[9] The request for admission stated, "Admit that between January 1, 2006 and the present, you showed persons other than Mr. Maloit intimate or nude photos of yourself that were taken by Mr. Maloit and posted online." *Hearing Tr.* [#76] at 67:21-24.

moved for attorney fees as a sanction based on the deficient discovery responses and failure to timely confer and respond. *Id.* at 76:1-3. The Court denied the oral motion, reasoning that "I have now warned and put Ms. Stapp on notice that she needs to timely confer . . . [and] timely comply with deadlines or seek extension of those deadlines before they expire." *Id.* at 76:3-13.

In September 2025, defense counsel contacted chambers requesting another hearing because disputes concerning the ordered supplemented disclosures remained unresolved. The Court addressed the dispute at a September 29, 2025 Discovery Hearing. At the hearing, the Court found that the descriptions of two individuals included in Plaintiff's initial disclosures, even as supplemented, were still deficient. *Hearing Tr.* [#77] at 9:14-12:2. The Court ordered Plaintiff to amend responses to two requests for admission styled as "admissions in part" because they were improper for the same reason identified by the Court in July. *Id.* at 93:13-94:17. The Court also ordered Plaintiff to reproduce documents without improper relevance-based redactions, *id.* at 22:5-11, 23:9-15; to supplement unresponsive responses to interrogatories, *id.* at 24:7-25:20, 36:1-15, 45:24-46:11, 60:14-61:1; and to produce responsive documents to proper requests for production, *id.* at 30:5-11, 39:25-40:2, 63:2-13, 64:17-23. The Court also ordered Plaintiff's counsel to have meaningful conferrals with her client about the documents and records in her possession. *Id.* at 31:23-32:21, 41:7-20, 55:14-24.

At the conclusion of the hearing, the Court authorized defense counsel to file a motion for sanctions, explaining to Plaintiff and her counsel that the Court had been "very unimpressed" with "the discovery responses that had been furnished" in advance of the

13

July hearing and with counsel's "level of unprofessionalism" at that hearing, not to mention the additional deficiencies plaguing Plaintiff's supplemental disclosures. *Id.* at 99:1-100:2.

After receiving the supplemental responses ordered at the September hearing, Defendant proceeded with his deposition of Plaintiff. In the Motion [#87], Defendant argues that Plaintiff's deposition testimony revealed that some of her earlier responses to written discovery were either inaccurate or incomplete. *See Motion* [#87] at 5-6. Defendant gives three examples in his Motion [#87].

First, Defendant points the Court to Interrogatory 12, in which Defendant asked: "Please identify each financial institution and associated account number, including but not limited to banks, credit unions, or pay applications like Venmo, at which You hold, held, or received funds from persons other than Mr. Maloit or Your employer(s) from January 1, 2018 to the present." *Def.'s Ex. D, Plf.'s 3rd Supp. Responses* [#87-4] at 9-10. Plaintiff answered: "I have dog sat for [T.L.] and other individuals in the past on an irregular basis. The amount of payment varied depending on the person, the timeline for dog sitting, and other factors. I have never received money in exchange for photographs or videos of myself." *Id.* However, in her deposition, Plaintiff testified as follows:

Q. Have you ever dog sat for [T.L.]?
A. He has cats and one dog, and they don't get along.
Q. Have you ever dog sat for [T.L.]?
A. No.
Q. No?
A. No.
Q. Are you aware that in one of your discovery responses, you indicate that you received money from Mr. [T.L.] because you dog sat for him?
A. I believe it was that I receive money because I dog sit for people.
Q. You also indicated in that discovery response "and other factors." Do you recall that?

A. No.

*Def.'s Ex. G, Plf.'s Depo.* [#89] at 178:10-25.[10]

Second, Defendant draws the Court's attention to Request for Production 10, in which he asked Plaintiff to "produce information sufficient to identify the person(s) (other than Yourself or family members) who sent You items from Amazon or any other service (e.g., Temu, etc.) at your address as gifts or in exchange for Your provision of pictures, videos, audio, adoration, attention, or any other thing of perceived value." *Def.'s Ex. D, Plf.'s 3rd Supp. Responses* [#87-4] at 28. Plaintiff responded, "I have received some items from [T.L.] as gifts for our friendship and never for any photograph or video depicting me in any sexual or intimate manner." *Id.* During her deposition, Plaintiff admitted that the Defendant once photographed her in a corset and boots that [T.L.] sent her through Amazon. *Def.'s Ex. G, Plf.'s Depo.* [#89] at 173:3-174:15.[11]

Third, Plaintiff testified on several occasions that it was possible that she shared intimate photographs of herself with third parties during the relevant period, and that such evidence existed in her text messages, but that she had not thoroughly searched her phone and related account with her phone carrier. *Id.* at 304:2-305:20, 306:5-20, 313:17-314:7.

In his Reply [#118], Defendant provided an additional example of Plaintiff's less-than-forthright discovery responses. Defendant served Request for Admission 2, which stated: "Admit that, following late 2009, You agreed to the posting of pictures of You to RedClouds." *Reply* [#118] at 3. Throughout the course of discovery, Plaintiff's answer

---

[10] Filed under Level 1 Restriction.

[11] Filed under Level 1 Restriction.

evolved from "Denied" in April 2025, to "Admitted to the extent that I was aware that Mr. Maloit posted no photographs on RedClouds that showed my face" in August 2025, to "Admitted" in October 2025. *Def.'s Ex. J, Plf.'s 3rd Supp. Responses* [#118-1] at 2.

Plaintiff's counsel moved to withdraw from the representation on December 1, 2025. *Motion to Withdraw* [#83]. Counsel stated that "Plaintiff ha[d] failed substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled." *Id.* at 2. The Court granted the Motion. *Minute Order* [#85]. Defendant filed the instant Motion for Sanctions [#87] a few weeks later, on January 9, 2026. In the certificate of conferral, Defendant states that he conferred with Ms. Stapp about the Motion for Sanctions [#87] prior to her withdrawal, and that she indicated Plaintiff's opposition.

## B.    Legal Standard

If a party moves to compel disclosure or discovery, and such motion is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). "But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* Where a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

16

"If a party or a party's officer . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). Such just orders may include:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

Finally, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In addition to or instead, the court may order reasonable expenses and attorney fees, inform the jury of the party's failure, or impose another appropriate sanction.

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). But "[t]he district court's discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular claim

17

which was at issue in the order to provide discovery.'" *Id.* (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). "Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation." *Id.* n.3.

In *Ehrenhaus*, the Tenth Circuit set out five factors for courts to assess before ordering dismissal as a discovery sanction. Those factors are: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. 965 F.2d at 921. Although these factors were originally established in the context of dispositive sanctions such as dismissal or default judgment, *see Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013), the Court will use this framework as a guide for assessing the reasonableness of dispositive and nondispositive sanctions alike. *See Villanueva Echon v. Sackett*, 809 F. App'x 468, 472-73 (10th Cir. 2020) (assuming that the *Ehrenhaus* factors applied to nondispositive sanctions).

## C.    Analysis

Before diving into the *Ehrenhaus* test, the Court makes two observations. First, with respect to awarding attorney fees, the Federal Rules limit the Court's discretion. Where a court grants a motion to compel discovery, the court *must* require the party whose conduct necessitated the motion, their attorney, or both to pay the movant's attorney fees unless, as relevant here, the nondisclosure was substantially justified or the award would be otherwise unjust. FED. R. CIV. P. 37(a)(5)(A). Where a party fails to comply

18

with a court's order on a motion to compel, the court *must* order the disobedient party, their attorney, or both to pay the movant's attorney fees unless the nondisclosure was substantially justified or the award would be otherwise unjust. FED. R. CIV. P. 37(b)(2)(C).

At the September 29, 2025 Discovery Hearing, the Court granted nearly all of Defendant's numerous oral motions to compel. *Hearing Tr.* [#77] at 9:14-12:2, 22:5-11, 23:9-15, 24:7-25:20, 30:5-11, 36:1-15, 39:25-40:2, 45:24-46:11, 60:14-61:1, 63:2-13, 64:17-23, 93:13-94:17. Further, at least one (and arguably three) deficiencies concerned issues that the Court had already ordered Plaintiff to cure at the July hearing. For example, Plaintiff did not adequately supplement her initial disclosures to include the subject matter of discoverable information that two identified individuals possessed pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i) the first time around, requiring a second order. *Hearing Tr.* [#76] at 62:1-15; *Hearing Tr.* [#77] at 9:14-12:2. Further, Plaintiff did not heed the Court's order in July that she cannot make partial admissions where the Request for Admission, as worded, simply requires an admission full stop. *Hearing Tr.* [#76] at 68:14-69:8. As a result, the Court had to order that the same deficiency be corrected for two more responses at the September hearing. *Hearing Tr.* [#77] at 93:13-94:17. Thus, both Fed. R. Civ. P. 37(a)(5)(A) and 37(b)(2)(C) are implicated here, and the Court finds that Plaintiff's failure to comply with the Court's discovery orders and produce relevant discovery was not at all justified, no less substantially so. Finding that no other circumstances make an award of attorney fees otherwise unjust, Defendant's attorney fees and costs associated with conferrals, preparation, and attendance at the September 29, 2025 Discovery Hearing are, at a minimum, an appropriate sanction.

Second, the Court is simultaneously recommending that Defendant's Motion for Summary Judgment [#91] be granted as to each of Plaintiff's claims. If adopted, this would moot Defendant's request for the following sanctions: (1) strike Plaintiff's claims, (2) dismiss Plaintiff's claims in whole, (3) strike Plaintiff's allegations that Defendant posted any pictures online without her consent from the spring of 2018 to present, and (4) preclude Plaintiff from testifying to or presenting evidence of the same. Therefore, in crafting an appropriate discovery sanction, the Court considers whether the remaining sanctions, in addition to an award of attorney fees,  are warranted: (1) prohibiting Plaintiff from opposing Defendant's counterclaim allegations that she lacked evidence to support her claims; (2) ordering that Plaintiff is deemed to have admitted allegations in Defendant's counterclaims concerning her lack of evidence or good faith; (3) striking Plaintiff's affirmative defenses 1 through 6; and (4) granting default judgment in favor of Defendant and against Plaintiff with respect to Defendant's counterclaims.

With that, the Court turns to the *Ehrenhaus* factors. The first factor is the degree of actual prejudice to the defendant. Here, the conduct of Plaintiff and her counsel primarily prejudiced Defendant by "causing delay and mounting attorney's fees." *Ehrenhaus*, 965 F.2d at 921. The Court finds that this prejudice can be remedied with an award of fees, without requiring additional dispositive sanctions.

The second factor, interference with the judicial process, also weighs against dispositive sanctions. While the Court questions Plaintiff and her counsel's diligence in applying the Court's July 2025 discovery orders to Plaintiff's supplemental responses, it cannot be said that they flagrantly disregarded or defied the Court's orders by refusing to supplement discovery responses at all.

20

The third factor is the culpability of the litigant, which the Court finds particularly important in this case. In her Response [#117] to the instant Motion [#87], the now pro se Plaintiff asserts that "the vast majority of the conduct cited in the Motion occurred prior to the withdrawal of Plaintiff's former counsel on December 1, 2025," and that "the Court [should] not attribute these alleged representative lapses to her personally." *Response* [#117] at 1. If the failure to comply with discovery obligations or court directives is the fault of the litigant's attorney, then the attorney is the proper party to suffer the sanction. *See M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 873 (10th Cir. 1987); *In re Sanction of Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984). But "even pro se litigants are not immune from sanctions for failing to obey a discovery order," including monetary sanctions. *Villanueva Echon*, 809 F. App'x at 471; *see also Kirby v. O'Dens*, No. 14-CV-388-GKF-PJC, 2015 WL 3455409, at *3 (N.D. Okla. May 29, 2015).

Here, Attorney Stapp's conduct leading to the September 2025 Discovery Hearing lacked diligence and professionalism. Attorney Stapp did not adequately meet deadlines, confer with her client or opposing counsel, or make a reasonable investigation into the facts or the law before submitting discovery responses to her opposing counsel and appearing before this Court. Her conduct was not substantially justified and an award of expenses is not otherwise unjust. Of course, Attorney Stapp's failure to meet deadlines, use of inappropriate and improper objections, and unprofessional reactions in the courtroom were outside of Plaintiff's control.

However, the culpability is not Attorney Stapp's alone. The record reflects that Plaintiff failed to timely respond to her attorney's communications, provided incomplete or misleading responses to discovery requests, and neglected her duty to adequately

investigate her own records. *See, e.g., Hearing Tr.* [#76] at 53:16-54:1 (communication delay); *Def.'s Ex. G, Plf.'s Depo.* [#89][12] at 304:2-305:20, 306:5-20, 313:17-314:7 (Plaintiff's inadequate efforts to search her phone); *id.* at 173:3-174:15, 178:10-25 (inconsistent or incomplete discovery responses). At the end of each of her discovery responses, Plaintiff verified, under penalty of perjury, that her answers were true and correct to be best of her knowledge, information, and belief. The course of discovery has called those sworn declarations into question, for which Plaintiff, and Plaintiff alone, bears the ultimate responsibility. What's more, the Court warned Plaintiff in July 2025 that she had a continuing obligation to produce any evidence to the defense that affirmatively links Defendant to the online postings. *Hearing Tr.* [#76] at 48:1-10. Nevertheless, Plaintiff supported her Response in Opposition to Defendant's Motion for Summary Judgment [#112] with an exhibit that she never produced to the defense. Therefore, a sanction that holds both Plaintiff and her former counsel responsible for their respective shares of the litigation conduct is appropriate and just.

The fourth factor is whether the Court warned the party in advance that noncompliance could result in a dispositive sanction. At the July hearing, defense counsel made an oral motion for discovery sanctions based on the time and resources expended in preparing for the hearing. *Hearing Tr.* [#76] at 75:19-24. The Court denied the motion. *Id.* at 76:3-10. However, the Court gave the following warnings:

- "I have now warned and put Ms. Stapp on notice that she needs to timely confer with [defense counsel] and his team." *Id.* at 76:3-4;

---

[12] Filed under Level 1 Restriction.

- "Ms. Stapp is on notice that untimely responses to discovery requests could result in a finding of waivers of any objections." *Id.* at 76:22-24.

Therefore, the oral motion put Attorney Stapp on notice that discovery sanctions were at play, and the Court warned her that a continued inability to meet deadlines could result in consequences in the form of a waiver. And although Plaintiff was present at the hearing to hear these warnings for herself, *see id.* at 43-44, the Court did not explicitly warn Plaintiff or her counsel that their conduct could result in the type of dispositive sanctions that are contemplated in the instant Motion [#87]. Therefore, this factor weighs against the imposition of a dispositive sanction.

The fifth and final factor is the efficacy of lesser sanctions. The dispositive sanctions at issue all but require a judgment in Defendant's favor and against Plaintiff on his state-law counterclaims. The Court finds that the lesser sanction of attorney fees is sufficient to alert Plaintiff to the seriousness of her conduct while remedying the costs that Defendant was forced to bear as a result of Plaintiff and her counsel's discovery conduct. Indeed, default judgment is generally considered a "harsh sanction," *Klein-Becker USA*, 711 F.3d at 1159, and courts in this Circuit have a "strong preference" for deciding cases on their merits. *Cabrera v. Emortgage Funding LLC*, No. 25-cv-03343-PAB-MDB, 2026 WL 183802, at *1 (D. Colo. Jan. 23, 2026) (citing *Rains v. Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991)).

Weighing each factor, the Court **orders** that Plaintiff and her former counsel shall be jointly and severally liable for Defendant's attorney fees and costs associated with conferrals, preparation, and attendance at the September 29, 2025 Discovery Hearing.

*See* FED. R. CIV. P. 37(a)(5)(A), 37(b)(2)(C). The Court **recommends** that Defendant's request for further dispositive sanctions be **denied**.

### D.    Hallucinated Citations

Finally, it has come to the Court's attention that Plaintiff's Response briefs in opposition to the instant Motion for Summary Judgment [#91] and Motion for Sanctions [#87] contain defective citations to case law. These defects include (1) misattributed or inaccurately quoted language from cases, (2) misrepresentations of legal concepts associated with the cited cases, and, most concerningly, (3) citations to cases that do not exist. Plaintiff appears to have used generative artificial intelligence to prepare her briefs. At this juncture, many generative AI tools are incapable of distinguishing between legitimate precedent and fabricated legal fiction. *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 574234, at *4 (S.D. Ind. Feb. 21, 2025) (noting that "the use of artificial intelligence must be accompanied by the application of actual intelligence in its execution.").

Defendant pointed out some of these deficiencies in his Reply in Support of Motion for Sanctions [#118], stating that the hallucinated citations to legal authority "forced [him] to incur yet further attorney fees to verify the falsity of [Plaintiff's] citations." *Reply* [#118] at 10. In response, Plaintiff filed a Notice of Errata [#124] explaining that she "had no intent to misstate any legal authority," "regrets these errors," and "withdraws reliance on any inaccurately cited authorities." *Notice of Errata* [#124] at 1.

Rule 11(b) operates to thwart litigation misconduct by requiring attorneys and pro se litigants to certify that they have "read the document, [have] conducted a reasonable inquiry into the facts and the law and [are] satisfied that the document is well grounded in

24

both, and is acting without any improper motive." *See Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991)). Specifically, Rule 11(b)(2) requires "an attorney or unrepresented party" to certify that "the claims, defenses, and other legal contentions are warranted by existing law[.]" FED. R. CIV. P. 11(b)(2). "Courts across the country . . . recognize that Rule 11 applies to the use of artificial intelligence." *Coomer v. Lindell*, No. 22-cv-01129-NYW-SBP, 2025 WL 1865282, at *3 (D. Colo. July 7, 2025). The submission of legal argument premised on nonexistent law generated by artificial intelligence is a flagrant Rule 11 violation. *See Wadsworth*, 348 F.R.D. at 495.

Failure to comply with Rule 11(b) can result in sanctions. *See* FED. R. CIV. P. 11(b)-(c). Like practicing attorneys, pro se litigants can be sanctioned under Rule 11. *See Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 882 (N.D. Miss. 2025) (sanctioning pro se litigant for submitting false citations in court filings and requiring litigant to pay costs incurred by the defendant). A court may sanction a litigant sua sponte for violating Rule 11(b), provided that certain procedures are followed. Namely, a court can "issu[e] a show cause order specifically describing the conduct implicating the rule, followed by a reasonable opportunity for the party/attorney so advised to demonstrate how she has not violated the rule." *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000).

In conducting a thorough inquiry, the Court believes that the following legal authorities that Plaintiff cited in her briefs do not exist:

- *Mastro v. Rigby*, 767 F.3d 934 (10th Cir. 2014). *Response* [#112] at 3.

- *United States v. Kitchen*, 57 F.3d 916 (10th Cir. 1995). *Response* [#112] at 5.

- *Somlo v. S.C. Johnson & Son, Inc.,* 7 F.3d 1334, 1338 (10th Cir. 1993). *Response* [#117] at 2, 4.

- *Mikulski v. Center for Psychiatric Rehabilitation*, 789 F.3d 1205, 1213 (10th Cir. 2015). *Response* [#117] at 2.

- *Chavez v. Young*, 880 F.2d 299, 302-03 (10th Cir. 1989). *Response* [#117] at 3.

- *Mobley v. McCormick*, 40 F.4th 1199, 1205 (10th Cir. 2022). *Response* [#117] at 3.

- *Shen v. Express Scripts, Inc.*, 2019 WL 4741257, at *3. Response [#117] at 4.

The Court will not tolerate filings riddled with hallucinated citations masquerading as legitimate legal authority. This conduct undermines the integrity of the judicial process and disrespects and wastes the Court's and Defendant's time and resources. *See Ferris*, 778 F. Supp. 3d at 880 ("Courts exist to decide controversies fairly, in accordance with the law. This function is undermined when litigants using AI persistently misrepresent the law to the courts."). The Court recognizes that Plaintiff proceeds in this matter pro se. However, this does not excuse such reckless conduct, as pro se litigants are subject to the same rules governing practicing attorneys. *See United States v. Distefano*, 279 F.3d 1241, 1245 (10th Cir. 2002); *Parker v. Ritter*, No. 08-cv-00737-MSK-KLM, 2010 WL 1213089, at *1 n.1 (D. Colo. Mar. 25, 2010).

Accordingly, the Court orders that, no later than **August 26, 2026**, Plaintiff shall **SHOW CAUSE** in writing why the Court should not further sanction her for her submission of defective legal citations.

## IV.    Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion for Summary Judgment [#91] be **GRANTED**.[13]

IT IS FURTHER **ORDERED** that the Motion for Sanctions [#87] is **GRANTED in part** insofar as Defendant seeks attorney fees as a discovery sanction. Counsel for Defendant shall file a Motion for Fees and Costs no later than **August 26, 2026**, in which Defendant clearly explains how each billing entry and/or cost for which reimbursement is sought (1) stems from Plaintiff and her former counsel's sanctionable conduct, and (2) is connected to the events giving rise to the September 29, 2025 Discovery Hearing. Defendant is reminded to comply with the requirements of D.C.COLO.LCivR 54.3.

IT IS FURTHER **RECOMMENDED** that the Motion for Sanctions [#87] be otherwise **DENIED**.

IT IS FURTHER **ORDERED** that, no later than **August 26, 2026**, Plaintiff shall **SHOW CAUSE** in writing why the Court should not further sanction her for her submission of defective legal citations.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d

---

[13] If this Recommendation is adopted, only Defendant's state-law counterclaims for abuse of process and extreme and outrageous conduct would remain in this case.

1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: July 29, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge